# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

JODIAN JENKINS,
    Plaintiff,

    v.

RAYTHEON TECHNOLOGIES
CORPORATION, et al.,
    Defendants.

No. 3:21-cv-406 (SRU)

## ORDER ON DEFENDANTS' MOTION TO STRIKE OR DISMISS, DOC. NO. 164; PLAINTIFF'S MOTION TO STRIKE, DOC. NO. 166; AND DEFENDANTS' MOTION TO COMPEL AND/OR DISMISS, DOC. NO. 170

## I.      Introduction

I scheduled a telephonic hearing on-the-record to be held March 1, 2023 regarding the defendants' motion to strike or dismiss the plaintiff's amended complaint, doc. no. 164; the plaintiff's motion to strike the defendants' motion to strike or dismiss, doc. no. 166; and the defendants' motion to compel and/or dismiss, doc. no. 170. *See* Doc. No. 180. Unfortunately, the plaintiff, Jodian Jenkins ("Jenkins"), did not attend the telephonic hearing. For the reasons set forth in this Order, the defendants' motion to strike or dismiss, doc. no. 164, is **granted in part and denied without prejudice in part**; the plaintiff's motion to strike, doc. no. 166, is **denied**; and the defendants' motion to compel and/or dismiss is **granted in part and denied without prejudice in part**.

## II.     Defendants' Motion to Strike Pursuant to Rule 12(f) or Dismiss Pursuant to Rule 12(b)(6), Doc. No. 164; and Plaintiff's Motion to Strike, Doc. No. 166

On May 11, 2022, the defendants filed a motion to strike and/or dismiss certain claims in the plaintiff Jodian Jenkins' amended complaint. *See* Doc. No. 164. In response, on May 12,

2022, the plaintiff filed a motion to strike the defendants' motion to strike or dismiss. *See* Doc. No. 166. As discussed below, the defendants' motion to strike and/or dismiss certain claims is **granted in part and denied in part**. The plaintiff's motion to strike the defendants' motion is **denied**.

A.  Factual Allegations in Plaintiff's Amended Complaint

Jenkins filed her amended complaint in the instant action in April 2022. In her complaint, she identifies as defendants Raytheon Technologies Corporation ("RTX") and its subsidiaries, Pratt & Whitney ("Pratt") and Hamilton Sundstrand ("Collins"). Doc. No. 151 at 1-2. She also brings her complaint against additional unnamed employees who "attacked [her] and/or [were] hired to 'fight' [her] . . . on behalf of [the] [d]efendants." Doc. No. 151 at 2.[1]

Jenkins purports to base her action on the following laws and authorities: the Civil Rights Act of 1964, the First Amendment, the "Privacy Act / Bill Of 1974 and All Amendments; the U.S. "Equal Employment Opportunity Laws"; the Fair Employment and Housing Act; the Equal Protection Clause of the Fourteenth Amendment; the Due Process Clause; the U.S. Equal Employment Opportunity Commission Laws, Policies, and Practices; the Connecticut Fair Employment Practice Act; the Lilly Ledbetter Fair Pay Act; the Americans with Disabilities Act; Federal Rule of Criminal Procedure 112 [sic]; and the Anti-Lynching Bill of 2022. *Id*. at 2-3. Jenkins also appears to bring a conspiracy to commit murder claim against the defendants.

---

[1] In her statement of facts, Jenkins refers to several individuals as "Defendants," and I liberally construe these individuals to be among the unnamed employees. Those individuals include Justin Blum and Dantaya Williams. Doc. No. 151 at 5.

1.      *Factual Allegations Regarding RTX/Pratt*

Jenkins alleges that she began her employment with defendants RTX and Pratt at the end

of 2016 and beginning of 2017. *See* Doc. No. 151 at 4. During her employment, she alleges that

two of her supervisors, Pamela Cavedon and Elizabeth Lannigan, "discriminated against [her]

and subjected [her] to a hostile environment because of [her] race, color, and national origin" as

a Black woman of African and Jamaican descent. *Id*. at 4. She provides several examples of

discriminatory incidents, including alleging that Cavedon "stated she did not want to hire a black

person," and that Lannigan had referred to Jenkins using a racial slur. *Id*. at 4. The discriminatory

conduct intensified over the next several months, and "[b]etween December 2017 and February

19, 2018," Jenkins submitted "verbal and written" complaints of the discrimination to human

resource officials Justin Blum and Dantaya Williams; Mark Paul, the supervisor of Lannigan and

Cavedon; and Earl Exam, the Vice President. *Id*. at 5. Rather than alleviating the discriminatory

conduct, Jenkins alleges that Justin Blum intensified the discrimination by disclosing Jenkins'

complaints to her coworkers. *Id*. As a consequence, Jenkins alleges that she was made to take on

work responsibilities outside of the scope of her role, including additional projects, email

correspondence, and on one occasion working for approximately twenty-four hours straight. *Id*.

at 5-6.

Jenkins alleges that the defendants terminated her employment in retaliation for her

complaints on February 23, 2018. *Id*. at 6. In the subsequent months, Jenkins re-applied to

various employment positions at RTX/Pratt. In June 2018, she interviewed for one such position,

and she was offered the position and given a July 2018 start date. *Id*. at 6-7. On July 19, 2018,

however, her offer was rescinded for "business restrictions pertaining to the hiring position." *Id*.

at 7. Jenkins alleges that the rescission of the offer, along with the defendants' general refusal to

hire her for positions for which she was well-qualified, was in retaliation for her "protected conduct and opposition to discrimination." *Id*. at 7.

Jenkins also appears to allege that RTX and Pratt engaged in discriminatory and retaliatory conduct during mediation proceedings that were held in February 2019. *Id*. at 9. Furthermore, she alleges that she was manipulated into releasing Pratt as a defendant during those mediation proceedings. *Id*. at 3.

### 2.     *Factual Allegations Regarding RTX/Collins*

Jenkins brings additional claims against Collins, a subsidiary of RTX, with whom she was employed between September 2019 and March 2020. *Id*. at 8. Jenkins alleges that the supervisory employees at Collins referred to her race and gender in a derogatory manner, including telling her she "[did] not know [her] place as a woman." *Id*. at 10. Jenkins also alleges that in September 2018, she "repeatedly requested . . . a full ergonomics workstation" from her employer. *Id*. at 9. Her request was granted but she never received the full accommodation. *Id*. As a result, she alleges she "suffered excruciating lower back pain," and in 2020, a lump was discovered in the center of her back. *Id*. Jenkins also alleges that she was placed on a "Performance Success Plan" in retaliation for her complaints of discrimination against her former employer, RTX/Platt. *Id*. at 10. In addition, she alleges that she was denied a bonus that other, majority white male coworkers received, and was then terminated in March 2020. *Id*. at 9.

### 3.     *Factual Allegations Regarding Retaliation for Filing of the Instant Action*

Jenkins also alleges that RTX, Pratt, and Collins conspired with other entities to attack her, harass her, and attempt to kill her in retaliation for her filing the instant case. *See id*. at 11-13. She alleges that that the defendants sought to overturn her U.S. citizenship and retained federal employees to withhold her birth certificate and personal mail, and to bar her from

speaking to the Federal Bureau of Investigation. *Id*. at 12. She also alleges that the defendants conspired with state and federal law enforcement to, *inter alia*, prevent the investigation of criminal conduct committed against her. *Id*. at 13. She further lists individuals she alleges were recruited by the defendants to attempt to murder her in retaliation for her protected conduct. *Id*. at 12-13.

B.   Standard of Review for Motion to Strike and Rule 12(b)(6) Motion to Dismiss

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A court may act "on its own" or "on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." *Id*.

A party may also move to dismiss a claim pursuant to Rule 12(b)(6), or "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b). "In considering a motion to dismiss for failure to state a claim, the Court should follow a 'two-pronged approach' to evaluate the sufficiency of the complaint." *Sommerville v. Geissler's Supermarket*, 2012 WL 253345, at *1 (D. Conn. Jan. 26, 2012) (citing *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010)).  "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009)). "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Hayden*, 594 F.3d at 161 (quoting *Iqbal*, 129 S. Ct. at 1950).

It is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

C.  <u>Analysis</u>

1.  *Motion to Strike or Dismiss Plaintiff's Claims Regarding Post-Employment Retaliation*

The defendants seek dismissal of Jenkins' claims regarding the defendants' alleged post-employment conduct. The defendants argue that the claims are not appropriately raised in connection with Jenkins' employment discrimination claims. Doc. No. 165 at 5 (citing Doc. No. 67; Doc. No. 69; Doc. No. 74).

Federal Rule of Civil Procedure 15(d) provides that "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). "Rule 15(d) reflects a liberal policy favoring a merit-based resolution of the entire controversy between the parties." *Witkowich v. Gonzales*, 541 F. Supp. 2d 572, 590 (S.D.N.Y. 2008) (cleaned up and citations omitted). The Second Circuit has instructed that "leave to file a supplemental pleading should be freely permitted when the supplemental facts connect it to the original pleading." *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995). Furthermore, "[a]bsent undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility, the motion should be freely granted." *Id*.

On April 4, 2022, this Court *sua sponte* granted Jenkins leave to file an amended complaint after she had filed multiple notices on the docket indicating her intent to raise

6

additional claims and factual allegations. *See* Doc. No. 142; *see, e.g.*, Doc. No. 140; Doc. No.

135.[2] Jenkins filed her amended complaint on April 20, 2022. Doc. No. 151. In her new

allegations regarding post-employment retaliation, Jenkins alleges that the defendants have

retaliated against her in the time since she filed the instant suit. Jenkins' retaliation claim is not

unrelated to her original employment discrimination claim against the same defendants. In her

chief employment discrimination claim, Jenkins similarly alleges that the defendants retaliated

against her for submitting complaints regarding the alleged discrimination. Jenkins' new

allegations concerning post-employment retaliation, therefore, are "closely related to those raised

. . . throughout the litigation thus far." *Witkowich*, 541 F. Supp. 2d at 590.

Nevertheless, even if Jenkins could properly raise a post-employment retaliation claim,

the factual allegations in her amended complaint in support of that claim are conclusory and

insufficient to support the claim. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009)

("[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet

is inapplicable to legal conclusions.") (citation omitted); *see also Iqbal*, 556 U.S. at 678 ("[T]he

pleading standard . . . does not require 'detailed factual allegations,' but it demands more than an

unadorned, the-defendant-unlawfully-harmed-me accusation."); *id.* at 679 ("Determining

whether a complaint states a plausible claim for relief will . . . be a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense.").[3]

---

[2] Although Jenkins' post-employment retaliation claims are "more properly considered as" supplemental pleading rather than amendments because they "occurred after the filing of the initial complaint in this action," the standard for motions to amend and motions to supplement is "[t]he same." *M.V.B. Collision, Inc. v. Allstate Ins. Co.*, 728 F. Supp. 2d 205, 222 (E.D.N.Y. 2010).

[3] The plaintiff's citations of *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981); and *Trans World Airlines v. Thurston*, 469 U.S. 111 (1985), in support of her post-employment retaliation claim are unavailing. *See* Doc. No. 151 at 11-12. Those cases concern discrimination *within* the scope of employment, and therefore the plaintiff's claim that the defendants retaliated against her, post-employment, for filing the case at bar is distinguishable.

For the foregoing reasons, I **grant** the defendants' motion to dismiss Jenkins' post-employment claims, and I **dismiss without prejudice** Jenkins' claims regarding post-employment retaliation. *See* Doc. No. 151 at 11-13 (plaintiff's post-employment retaliation claim).

### 2.   *Plaintiff's Claims Against Pratt*

The defendants further argue that the plaintiff's claims concerning her employment with Pratt are time-barred, that certain allegations concerning statements at mediation proceedings should be stricken, and that the plaintiff never properly served Pratt. For the reasons discussed below, I **grant** the defendants' motion to dismiss claims concerning time-barred conduct, I **deny without prejudice** the defendants' motion to strike statements related to mediation proceedings, and I **order** the plaintiff to serve Pratt with the amended complaint and file proof of service on the docket within **21 days** of this Order.

The defendants argue that Jenkins' allegations concerning Pratt are time-barred. "When a person files a discrimination charge with a state equal employment opportunity agency, Title VII requires him to file a complaint with the EEOC within 300 days of the alleged act of discrimination." *Roberts v. Jud. Dep't*, 2001 WL 777481, at *3 (D. Conn. Mar. 28, 2001), *aff'd*, 25 F. App'x 75 (2d Cir. 2002); *see also Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996). "This requirement functions as a statute of limitations, in that discriminatory incidents not timely charged before the EEOC will be time-barred upon the plaintiff's suit in district court." *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998) (internal citation omitted). "Whether or not the [agency] acts on the charge, a complainant is entitled to a 'right-to-sue' notice 180 days after the charge is filed." *Wilson v. Long Ridge Post Acute Care*, 2023 WL 2072510, at *8 (D. Conn. Feb. 17, 2023) (quoting *Fort Bend Cnty., Texas*

*v. Davis*, 139 S. Ct. 1843, 1847 (2019)); *see also* 42 U.S.C. § 2000e-5(f)(1); Conn. Gen. Stat. § 46a-10 (b). "The complainant may then commence a civil action . . . within ninety days of his receipt of this notice." *Wilson*, 2023 WL 2072510, at \*8 (citation omitted); *see also* 42 U.S.C. § 2000e-5(f)(1); Conn. Gen. Stat. § 46a-101(e).

Jenkins brings a claim of employment discrimination against RTX and its subsidiary Pratt, where she was employed from early 2017 until her termination in February 2018. Doc. No. 151 at 4, 6. After her termination, Jenkins alleges that in June 2018, she was offered new employment at Pratt, but the offer was rescinded in July 2018. *Id*. at 7. She alleges that the rescission of the offer was in retaliation for her complaints about employment discrimination. *Id*. She further raises allegations against Pratt in the context of a mediation proceeding that occurred in February 2019. *Id*. at 3, 9. In her amended complaint, Jenkins references two Connecticut Commission on Human Rights & Opportunities ("CHRO") complaints, one filed in 2018 and one filed in 2020.[4] *See* Doc. No. 151 at 4.

Accepting as true Jenkins' allegation that she filed a CHRO complaint in 2018, Jenkins would have been entitled to a right-to-sue notice from the agency within 180 days, and she would have had to initiate her suit within ninety days of receipt of that notice. *See Wilson*, 2023 WL 2072510, at \*8. Assuming Jenkins filed her 2018 CHRO complaint on the last day in 2018, December 31, and applying the applicable timing provisions, the latest she could have filed her suit regarding her charges in the 2018 CHRO complaint would have been September 30, 2019.[5]

---

[4] In their motion to dismiss, the defendants only attach Jenkins' April 24, 2020 CHRO complaint, and it is based on that CHRO complaint alone that they allege her claims are time barred.[4] *See* Doc. No. 165-1 at 2. Furthermore, to her original complaint, Jenkins only attaches a release of jurisdiction from a 2020 CHRO case. Doc. No. 1-1 at 7. I take judicial notice of the CHRO complaint that the defendants filed as an exhibit attached to their motion to strike or dismiss. *See* Doc. No. 165-1 at 208; *see also Anderson v. Derby Bd. of Educ.*, 718 F. Supp. 2d 258, 264 (D. Conn. 2010).

[5] One hundred and eighty days from December 31, 2018 is Saturday, June 29, 2019. Because June 29 is a Saturday, the next deadline is to be measured from Monday, July 1, 2019. Ninety days from Monday, July 1, 2019 is Sunday,

Because Jenkins did not file the instant suit by that date, any charges in her 2018 CHRO complaint are time-barred.

Jenkins filed her 2020 CHRO complaint on April 24, 2020. *See* Doc. No. 165-1 at 2. Applying the 300-day requirement to that charge, in order for Jenkins' discrimination allegations against Pratt to be timely, the discriminatory conduct must have occurred within 300 days of April 24, 2020. The earliest conduct that is not time-barred, then, is conduct that occurred on June 29, 2019. Therefore, to the extent that Jenkins' claims against Pratt concern discriminatory conduct that took place before June 29, 2019, those claims are also time-barred. Accordingly, Jenkins' claims concerning conduct by Pratt prior to June 29, 2019 are **dismissed with prejudice**.

Separately, the defendants also request that Jenkins' allegations regarding a settlement agreement with RTX and Pratt be stricken pursuant to Rule 12(f). *See* Fed. R. Civ. P. 12(f). Federal Rule of Evidence 408 makes inadmissible evidence of "conduct or a statement made during compromise negotiations about the claim." Fed. R. Evid. 408. However, in general, "[e]videntiary questions . . . should . . . be avoided at such a preliminary stage of the proceedings." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) (cautioning granting of motion to strike portions of complaint based on evidentiary rules). Moreover, "although . . . Rule 408 certainly protect[s] 'statements made in compromise negotiations,' it is well-settled that 'Rule 408 is inapplicable when the claim is based upon some wrong that was committed in the course of the settlement discussions." *Deluca v. Allied Domecq Quick Serv. Restaurants*, 2006 WL 2713944, at \*2 (E.D.N.Y. Sept. 22, 2006) (collecting cases); *see also Carney v. Am. Univ.*, 151 F.3d 1090, 1095 (D.C. Cir. 1998) (Settlement letters "can be

---

September 29, 2019. Because September 29 is a Sunday, the deadline to file the suit is on Monday, September 30, 2019.

used to establish an independent violation (here, retaliation) unrelated to the underlying claim which was the subject of the correspondence (race discrimination).”). In support of her racial discrimination claim in her amended complaint, Jenkins describes an exchange that occurred during a mediation proceeding with the defendants. *See* Doc. No. 151 at 9. She also alleges she was “manipulated into signing [a] release form” at a mediation session. *See id*. at 3. Because Jenkins’ amended complaint may be liberally construed to offer those mediation-related allegations for an admissible purpose, I **deny without prejudice** the defendants’ motion to strike Jenkins’ claims arising out of mediation.

The defendants also argue that Pratt is not a party to this lawsuit because it has not been properly served. *See* Doc. No. 165 at 8. Rule 4 of Civil Procedure requires a plaintiff to serve a summons and complaint within 90 days after a complaint is filed. *See* Fed. R. Civ. P. 4(c), (m). “If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.” Fed. R. Civ. P. 4(m). Accordingly, the plaintiff is **ordered to serve Pratt** with the amended complaint and file proof of service within **21 days**, **or her claims against Pratt shall be dismissed**.

### 3.  *Jenkins’ Criminal Claims*

The defendants also move to dismiss Jenkins’ criminal claims. In her amended complaint, Jenkins alleges that the defendants are engaged in criminal conduct, alleges that the defendants are conspiring to murder her, and seeks to bring claims pursuant to the “Anti-lynching Bill of 2022” and Rule 112 [sic] of Criminal Procedure. *See* Doc. No. 151 at 2-3, 12. As I have previously explained, this matter is a civil action, and the court lacks authority to convert this matter into a criminal prosecution. *See* Doc. No. 107 (previous Order); *see also Leeke v.*

*Timmerman*, 454 U.S. 83, 87 (1981). Accordingly, I **grant** the defendants' motion to dismiss Jenkins' criminal claims, and Jenkins' claims for violations of criminal laws are **dismissed with prejudice**. Jenkins may not raise any additional criminal law claims in connection with this civil case.

   4.   *Additional Causes of Action*

   The defendants also seek to dismiss Jenkins' claims arising under the Equal Protection Clause, due process, the First Amendment, the Privacy Act/Bill of 1974, the Lilly Ledbetter Fair Pay Act, the U.S. Equal Employment Opportunity Commission Policies and Practices, and Rule 112 [sic] of Criminal Procedure.

   Because the defendants are private actors and entities, Jenkins may not bring an equal protection or due process claim against them. *See Grogan v. Blooming Grove Volunteer Ambulance Corps.*, 768 F.3d 259, 263 (2d Cir. 2014) (stating that the Fourteenth Amendment of the federal Constitution regulates only the government and not private parties); *Warde v. Housatonic Area Reg'l Transit Dist.*, 154 F. Sup. 2d 339, 356 (D. Conn. 2001) (stating that "there is no private cause of action for monetary damages under the equal protection and due process provisions . . . of the Connecticut Constitution"). Furthermore, Jenkins cannot bring a claim under the Privacy Act against private individual defendants. *Burch v. Pioneer Credit Recovery, Inc*., 551 F.3d 122, 124 (2d Cir. 2008) (per curiam) ("[T]he private right of civil action created by the Privacy Act is specifically limited to actions against agencies of the United States government."). In addition, to the extent that I might liberally construe the complaint to raise a claim pursuant to the Freedom of Information Act, "private individuals are not proper defendants in FOIA actions." *Statton v. Fla. Fed. Jud. Nominating Comm'n*, 2019 WL 1763239, at *3 (M.D. Fla. Apr. 22, 2019).

Jenkins' claims under the First Amendment, the Ledbetter Act, and the Federal Rules of Criminal Procedure are also improper. "The First Amendment does not create a private cause of action." *See Boyle v. Hartford County*, 2004 WL 3222888, at *5 (D. Md. Mar. 31, 2004). Moreover, Jenkins may not sue under the Ledbetter Act because the statute "does not create substantive rights." *Jones v. Richland Cty.*, 2016 WL 11409594, at *3 (D.S.C. June 13, 2016). Nor do federal procedural rules create substantive rights. *See Rogers v. Furlow*, 729 F. Supp. 657, 660 (D. Minn. 1989).

Lastly, to the extent that I may liberally construe Jenkins' claims pursuant to the "U.S. Equal Employment Opportunity Commission Policies and Practices" to arise under a proper cause of action, such as Title VII of the Civil Rights Act of 1964, the defendants' motion to dismiss that claim is **denied without prejudice**.

For the foregoing reasons, I **dismiss with prejudice** the following claims raised by Jenkins in her amended complaint: equal protection, due process, the First Amendment, the Privacy Act/Bill of 1974, the Lilly Ledbetter Fair Pay Act, and Rule 112 [sic] of Criminal Procedure.

If the plaintiff complies with all the requirements of this Order, her claims against RTX, Pratt, and Collins may proceed under the Americans with Disabilities Act ("ADA"), and her claims may proceed under Title VI of the Civil Rights Act of 1964 with respect to any conduct that occurred after June 29, 2019. In addition, although her claims against the individual defendants may not proceed under the ADA, Title VII, or any of the causes of action dismissed by this Order, claims against those individuals potentially could proceed under other causes of action. *See Martin v. Town of Westport*, 329 F. Supp. 2d 318, 332 (D. Conn. 2004) (no individual liability under the ADA); *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004)

(no individual liability under Title VII). Furthermore, if Jenkins wishes to introduce additional

facts in support of her post-employment retaliation claim, she may file a motion seeking leave to

amend her complaint to include those facts.

5. *Plaintiff's Motion to Strike*

In response to the defendants' motion to strike or dismiss the plaintiff's amended

complaint, the plaintiff has filed a motion to strike the defendants' motion. *See* Doc. No. 166.

Because the defendants' motion to strike or dismiss is meritorious and contains no "insufficient

defense or any redundant, immaterial, impertinent, or scandalous matter," I **deny** the plaintiff's

motion to strike the defendants motion to strike, doc. no. 166. *See* Fed. R. Civ. P. 12(f).

In so ruling, I have considered the legal arguments in Jenkins' motion to strike. However,

Jenkins' motion to strike also seems to allege new facts. *See generally* Doc. No. 166. If Jenkins

wishes to introduce additional factual allegations, she should file a motion to amend her

amended complaint. At that point, I will consider her motion to amend the complaint and

determine whether to grant her request.

## III.   Defendants' Motion Dismiss Pursuant to Rule 41(b) or Compel, Doc. No. 170

On August 19, 2022, the defendants filed a motion to dismiss or to compel pursuant to

Rules 41(b) and 37(d)(1)(A)(ii). Specifically, the defendants seek an order dismissing the instant

case with prejudice or, in the alternative, compelling the plaintiff to comply with her discovery

obligations. For the reasons below, I **grant in part and deny in part** the defendants' motion to

dismiss or compel.

A.  Standard of Review for Rule 41(b) Motion to Dismiss and Motion to Compel

In general, a court has broad discretion in resolving discovery disputes and determining the scope of discovery in a given case. *See Doe v. Town of Greenwich*, 2020 WL 2374991, at *2 (D. Conn. Feb. 20, 2020). Federal Rule of Civil Procedure 37 provides that "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). "If a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions." Fed. R. Civ. P. 37(a)(3)(A). In addition, "[a] party seeking discovery may move for an order compelling an answer, designation, production or inspection . . . if . . . a party fails to answer an interrogatory submitted under Rule 33" or "a party fails to produce documents . . . or fails to permit inspection—as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B). Rule 37 also instructs that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

Rule 37(d) provides that a court "may, on motion, order sanctions if . . . a party . . . fails, after being served with proper notice, to appear for that person's deposition; or . . . a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written response." Fed. R. Civ. P. 37(d)(1)(A); *see also Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) ("[F]ailure to comply [with a court's orders] may result in sanctions, including dismissal with prejudice."). "A motion for sanctions for failing to answer or respond must include a certification that the movant has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response without court action." Fed. R. Civ. P. 37(d)(1)(B).

"All litigants, including *pro ses*, have an obligation to comply with court orders." *Agiwal*, 555 F.3d at 302 (cleaned up and citation omitted). "The severe sanction of dismissal with

prejudice may be imposed even against a plaintiff who is proceeding *pro se*, so long as a warning has been given that noncompliance can result in dismissal." *Valentine v. Museum of Mod. Art*, 29 F.3d 47, 50 (2d Cir. 1994).

Rule 41(b) provides another avenue for dismissal, stating that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). The Second Circuit sets forth factors for district courts to consider before dismissing under Rule 41(b). These factors are:

> (1) the duration of the plaintiff's failures; (2) whether plaintiff had received notice that further delays would result in dismissal; (3) whether the defendant is likely to be prejudiced by further delay; (4) whether the district judge has taken care to strike the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard; and (5) whether the judge has adequately assessed the efficacy of lesser sanctions.

*LeSane v. Hall's Sec. Analyst, Inc*., 239 F.3d 206, 209 (2d Cir. 2001) (cleaned up). The Second Circuit does not "require the court to discuss the factors on the record," but "a decision to dismiss stands a better chance on appeal if the appellate court has the benefit of the district court's reasoning." *Id*. (citation omitted).

### B. Defendants' Allegations Regarding Plaintiff's Noncompliance

In support of their motion to compel or dismiss pursuant to Rule 41(b), the defendants allege the following facts regarding Jenkins' failure to comply:

Jenkins "refused to participate in the preparation of a joint case management report," so defendants filed one "without input from" her. Doc. No. 170-1 at 3-4; *see also* Doc. No. 127 (the defendants' Rule 26(f) Report).

During a January 5, 2022 status conference, I explained the discovery rules to Jenkins. Doc. No. 170-1 at 4; *see also* Doc. No. 138 at 11-14 (transcript). On April 4, 2022, I held a Rule

16 conference with the parties and entered a Scheduling Order setting forth discovery deadlines. Doc. No. 170-1 at 4; *see also* Doc. No. 142 (the Court's memorandum of Rule 16 conference and order).

Jenkins' responses to the defendants' interrogatories and document requests were due on April 11, 2022. Jenkins filed "untimely and incomplete responses" to the defendants' document requests on May 4, 2022, and Jenkins never responded to defendants' interrogatories. *Id*. at 4-5. She incorrectly filed her responses on the docket, and when defendant counsel requested she remove the responses and documents from the docket, she "refused to do so." *Id*; *see also* Doc. No. 170-3 at 33 (email from defendant counsel to Jenkins); Doc. No. 170-2 at ¶ 9 (defendant counsel declaration stating Jenkins and defendant counsel spoke by telephone, and she refused to remove the discovery materials from the docket).

I set a deadline of May 4, 2022 for Jenkins' initial disclosures. Jenkins never served her initial disclosures. *See* Doc. No. 170-1 at 4-5.

On June 6, 2022, defendant counsel wrote to Jenkins "requesting that she provide her interrogatory responses and [i]nitial [d]isclosures, and addressing the deficiencies in her responses to [the] [d]efendants' document requests." *Id*. at 5. The defendants attempted to resolve the dispute by telephone with Jenkins, and on July 15, 2022 the defendants and Jenkins mutually agreed to speak by telephone on July 18, 2022. *Id*. at 5; *see also* Doc. No. 170-2 at ¶¶ 11-12; Doc. No. 170-3 at 49. On July 16, 2022, Jenkins emailed the defendants' counsel stating, *inter alia*:

> I WILL NOT CONTINUE PARTICIPATING IN THIS SO-CALLED
> 'CASE' Therefore, you and your Clients are more than free to continue as
> you deem 'NECESSARY' . . . PLEASE DO NOT CONTACT ME ANY
> FURTHER AS THERE IS NOTHING ELSE I THE REPEATED
> VICTIM HAVE TO SAY OR DO IN THIS . . . . SINCE THIS CASE
> WAS A PRETEXT TO TARGET AND VIOLATE MY RIGHTS AND

> FREEDOM TO WORSHIP THE LORD GOD ALMIGHTY- [I] AM
> OUT!!!!

Doc. No. 170-1 at 5; Doc. No. 170-3 at 51-53; *see also* Doc. No. 170-2 at ¶ 13. Jenkins never

joined the call on July 18, 2022. Doc. No. 170-1 at 5-6.

On August 1, 2022, Jenkins emailed the defendants' counsel and this Court's Chambers

stating, *inter alia*, the following:

> I AM NOT DROPPING THE LAWSUIT AGAINST YOUR CLIENTS;
> THIS MY LAWSUIT AGAINST YOUR CLIENTS WILL BE
> INCORPORATED IN MY LAWSUIT AGAINST THE STATE OF
> CONENCTICUT (CT) . . . I AM TAKING LEGAL ACTIONS
> AGAINST YOU ALL COLLECTIVELY IN ONE LAWSUIT . . . I AM
> NOT SIGNING ANY DOCUMENTS TO DROP THIS SUIT AGAINST
> YOUR CLIENTS – AS I WILL SUIT IN A COURT OF LAW THAT IS
> NOT BIAS AND WORKING IN THE INTERESTS OF YOUR
> CLIENTS, AS IS EVIDENTIARY TO THE BIAS DISPLAYED IN THE
> STATE OF CONNECTICUT COURTS . . . .

Doc. No. 170-3 at 63-64; Doc. No. 170-1 at 6.

On August 19, 2022, the defendants served Jenkins a notice of deposition by email and

U.S. mail. Doc. No. 174 at 1; Doc. No. 174-1 at 1; *id*. at 4. On August 20, 2022, Jenkins

responded by email to the defendants' counsel stating, "DO NOT MAIL ME ANYTHING –

THIS IS NOT AND HAS NOT BEEN A TRUE LEGAL CASE AS IS EVIDENTIARY!!" Doc.

No. 174 at 1; Doc. No. 174-1 at 9.

On September 9, 2022, Jenkins failed to appear for her scheduled deposition. Doc. No.

174 at 1-2; Doc. No. 174-1 at 2; *id*. at 11-17 (transcript).

The defendants certify that they "have in good faith attempted to confer with Plaintiff to

obtain her discovery compliance or dismissal without court action." Doc. No. 170-1 at 6.

C.  Plaintiff's Recent Filings on the Docket Showing Disinterest in Case

Jenkins' recent filings in the case at bar demonstrate a disinterest and, at times, a refusal to participate in this case. On May 2, 2022, Jenkins filed a motion seeking that my recusal. *See* Doc. No. 154. Among her stated reasons, Jenkins wrote that "though [she has] repeatedly Motioned for [me] to implement restraints on Defendants," I have "merely stated excuses to deny all these [] Motions." *Id*. at 5. She further wrote that I am "a member of the Defendants inner circle." *Id*. On May 5, 2022, Jenkins filed an additional notice stating, *inter alia*, that the defendants have "turned this case into a 'circus'" and stating that this "will be [her] final and only response to ALL the Court's argued reasons . . . ." Doc. No. 161 at 6; *see also* Doc. No. 167 at 2 (additional notice filed by the plaintiff on May 17, 2022, which, in part, reiterates her desire to reassign the case). On June 13, 2022, I issued an order denying Jenkins' motion for recusal. *See* Doc. No. 169 (written order denying the plaintiff's motion for recusal).

On August 20, 2022, in lieu of a response to the defendants' motion to strike or dismiss Jenkins' amended complaint, Jenkins filed a "final" notice to the court stating, "Hence let the record show – I, PLAINTIFF is recusing myself from this Court." Doc. No. 171 at 1. Jenkins stated several reasons for her desire to recuse herself, including alleging that the court and state of Connecticut have conspired with the defendants and local law enforcement to murder her. *See id*. at 4. On August 25, 2022, I issued an order stating that "[b]ased on [Jenkins' August 20, 2022 notice], it is unclear if Jenkins intends to file an opposition to the Defendants' motion. Accordingly, Jenkins is advised that unless she files an opposition by September 9, 2022, the notice, doc. no. 171, will be construed as her opposition to the motion." Doc. No. 172. Jenkins did not meet the September 9, 2022 deadline.

On September 20, 2022 Jenkins filed an additional notice on the docket reiterating her desire to recuse herself. *See* Doc. No. 173 at 2 ("THIS IS MY ADDITIONAL NOTICE OF

RECUSING MY APPEARANCE IN THIS COURT."). She also wrote that the notice was not in opposition to the defendants' motion. *Id*. at 1 ("THIS NOTICE IS NOT AN OPPOS[I]TION AND/OR RESPONSE TO DEFENSE").

On September 30, 2022, Jenkins filed another notice. In it, she alleges, *inter alia*, that the "State of Connecticut's head demon and demons" are attempting to murder her. Doc. No. 175 at 2 (cleaned up). To her notice, she attached several documents, including information about other pending Connecticut state cases to which she appears to be a party and text messages that appear to be from an officer of defendant Collins. She also includes copies of several emails she has sent to various parties, including to my chambers. One email dated September 1, 2022 states, *inter alia*, "I WILL NO LONGER PARTICIPATE IN ANY COURTS (FEDERAL AND STATE) WITHIN THE STATE OF CONNECTICUT." Doc No. 175 at 40. The email also accuses its recipients of attempting to kill her; of engaging in "satanic practices of farming demonic spirits"; of defrauding her "into buying a house" and "obtain[ing] two federal loans under [her name] in order "to ensure [she] is homeless and penniless"; of conspiring with others including law enforcement to stalk and harass her; and of burning her passport. *Id*. at 38-40 (cleaned up). Jenkins further attaches five additional emails sent to various recipients including my chambers—one sent later in the afternoon on September 1, 2022, *see id*. at 41-43; one sent September 8, 2022, *see id*. at 44-45; one sent September 27, 2022, *see id*. at 47-48; and two sent September 28, 2022, *see id*. at 49-51; *id*. at 52-53. The emails make several allegations, many unrelated to the instant case, including reiterating certain of her allegations regarding the state of Connecticut. *See, e.g.*, *id*. at 41-43.

On October 6, 2022, Jenkins filed an additional notice with further allegations regarding a purported conspiracy involving local law enforcement, the state of Connecticut, her neighbors,

and other individuals. *See* Doc. No. 176. In her notice, she wrote, "CASE AT BAR IS MERELY USED TO SILENCE ALL . . . MY FOREGOING COMPLAINTS." *Id.* at 7.

On October 21, 2022, Jenkins filed "additional supporting documents and/or exhibits." *See* Doc. No. 177. Among her attached documents are copies of six emails dated October 8, 10, 12, 14, 20, and 21, 2022 sent to my chambers but addressed to other recipients concerning matters seemingly irrelevant to the case at bar, such as her home ownership. *Id.* at 15-21, 23, 25-26; 30; 31-33; *see also id.* at 28 (email to other recipients, including the Connecticut State Court Clerk, reiterating similar allegations of conspiracy).

D. Analysis

The defendants seek dismissal of the instant case in its entirety pursuant to Rule 41(b) for failure to prosecute. In determining whether to grant the defendants' request, I will consider each of the five factors for dismissal pursuant to Rule 41(b) as outlined by the Second Circuit in *LeSane v. Hall's Sec. Analyst, Inc*., 239 F.3d 206, 209 (2d Cir. 2001).

The first factor, the duration of the failures, favors dismissal. Jenkins' "failures" date back nearly a year, to March 2022, when she did not participate in the preparation of a joint Rule 26(f) report with the defendants. Doc. No. 170-1 at 3-4; *see also* Doc. No. 127 (the defendants' Rule 26(f) Report, filed March 10, 2022). Even if I afford Jenkins special leniency with respect to her understanding of the Rule 26(f) report requirements, as early as April 11, 2022, Jenkins began failing to adhere to discovery obligations that were explained to her. In a status conference in January 2022, I explained the discovery rules to Jenkins, and in a phone conference in April 2022, I set discovery deadlines for this case. *See* Doc. No. 138; Doc. No. 142. Notwithstanding my explanation of the discovery rules and deadlines to Jenkins, Jenkins failed to meet her April 11, 2022 deadline for the defendants' interrogatories and document requests. *See* Doc. No. 170-1

at 4-5. Apparently, Jenkins has still not responded to the defendants' interrogatories and never filed complete responses to the defendants' document requests. *See id.*; Doc. No. 170-2 at ¶ 9. The lengthy duration of Jenkins' failures to comply thus favors dismissal. *Cf.*, *Goldberg v. Prestige Automotor LLC*, 2007 WL 9757905, at *1 (D. Conn. Oct. 18, 2007) ("The Second Circuit has upheld dismissals for delays as short as six months.") (citing *United States ex rel. Drake v. Norden Systems, Inc.*, 375 F.3d 248, 255 (2d Cir. 2004); *Chira v. Lockheed Aircraft Corp.*, 634 F.2d 664 (2d Cir. 1980)).

The second factor, whether plaintiff had received notice that further delays would result in dismissal, does not favor dismissal. Prior to this Order, I did not provide Jenkins with such notice.

The third factor, whether the defendant is likely to be prejudiced by further delay, favors dismissal. Courts may presume prejudice by a delay. *See United States ex rel. Drake*, 375 F.3d at 256-57. Jenkins' repeated refusal to participate in this case, which occurred again at this week's scheduled hearing, moreover, indicates that "extending the litigation will almost certainly result in continued delay." *Pena v. Zazzle Inc.*, 587 F. Supp. 3d 109, 114 (S.D.N.Y. 2022).

The fourth factor, whether the district judge has taken care to strike the balance between managing the court's docket and the plaintiff's interest in receiving a fair chance to be heard, also favors dismissal. Here, I consider whether the plaintiff's failure "was silent and unobtrusive" or whether it was "vexatious and burdensome." *LeSane*, 239 F.3d at 210. "There must be compelling evidence of an extreme effect on court congestion before a litigant's right to be heard is subrogated to the convenience of the court." *Lucas v. Miles*, 84 F.3d 532, 535-36 (2d Cir. 1996). Since the removal of the instant case in March 2021, Jenkins has filed numerous notices on the docket. *See, e.g.*, Doc. No. 45; Doc. No. 59; Doc. No. 60; Doc. No. 111; Doc. No.

112. Even if I were only to look at the period since Jenkins' first missed discovery deadline, April 11, 2022, her filings on the docket would still be numerous. In fact, since April 11, 2022, she has filed ten filings of various lengths stylized as notices, exhibits, and responses, many of which contain documents and allegations irrelevant to the case at bar. *See* Docs. No. 149, 158, 160, 163, 167, 171, 173, 175, 176, 177. In addition to those notices and exhibits, she has also filed a number of written motions since April 11, 2022, including her motion for a hearing regarding her allegations of the defendants' use of law enforcement to retaliate against her, doc. no. 150; her motion for hearing based on the allegation that the defendants "left dog feces below [her] kitchen window," doc. no. 153; her motion to recuse me, doc. no. 154; and her motion to strike the defendants' motion to strike, doc. no. 166. Despite all those filings, Jenkins has not complied with her discovery obligations, has refused to respond to the defendants' recent motions, and has repeatedly expressed a refusal to participate in the case. *See, e.g.*, Doc. No. 170-3 at 51; Doc. No. 173 at 1-2; Doc No. 175 at 40. The plaintiff's failures in the instant case are therefore more "vexatious and burdensome" than they are "silent and unobtrusive." *LeSane*, 239 F.3d at 210. Accordingly, the fourth factor weighs in favor of dismissal.

The fifth factor, considerations of sanctions less drastic than dismissal, does not favor dismissal at the instant stage because Jenkins has not yet been warned that sanctions could be imposed for her noncompliance.

Considering all five factors in sum, a dismissal at the instant stage would be premature because Jenkins was not provided notice that her noncompliance would result in dismissal before this Order. Nevertheless, although outright dismissal at this stage would be premature, the plaintiff's disregard of discovery deadlines, along with her apparent disinterest in participating in the instant case, makes court intervention necessary.

Accordingly, I **deny without prejudice** the defendants' motion to dismiss pursuant to Rule 41(b), and I **grant** the defendants' motion to compel. I **order** the following:

The plaintiff is **ordered** to respond to the defendants' interrogatories, the Court's initial discovery protocols, and the defendants' document requests, within **21 days** of this Order.

The plaintiff is also **ordered** to sit for a deposition within **45 days** of this Order.

**This Order shall serve as notice to the plaintiff that if she does not comply with this Order, <u>her case will be dismissed</u>.** *See* Local Rule 41(a).

## IV.   Conclusion

In summary, the defendants' motion to dismiss or strike, doc. no. 164, is **granted in part and denied without prejudice in part**. Specifically, the defendants' motion to dismiss Jenkins' post-employment claims is **granted without prejudice**; the motion to dismiss claims concerning Pratt's conduct as time-barred is **granted with prejudice**; the motion to strike statements related to mediation proceedings is **denied without prejudice**; the motion to dismiss the plaintiff's criminal claims (including the claim raised pursuant to the "Anti-Lynching Bill") is **granted with prejudice**; the motion to dismiss the plaintiff's claims raised pursuant to the Equal Protection clause, due process, the First Amendment, the Privacy Act/Bill of 1975, the Lilly Ledbetter Fair Pay Act, and Rule 112 [sic] of Criminal Procedure is **granted with prejudice**; and the motion to dismiss the plaintiff's claims raised pursuant to the "U.S. Equal Employment Opportunity Commission Policy and Practices" is **denied without prejudice** to the extent this Court may liberally construe those claims as arising under Title VII.

The plaintiff's motion to strike the defendants' motion to strike, doc. no. 166, is **denied**.

The defendants' motion to dismiss pursuant to Rule 41(b) or to compel, doc. no. 170, is **granted in part and denied in part**.

24

In addition, the plaintiff is **ordered** to serve Pratt with the amended complaint and file proof of service on the docket within **21 days** of this Order. The plaintiff is **ordered** to respond to the defendants' interrogatories, the Court's initial discovery protocols, and the defendants' document requests within **21 days** of this Order. The plaintiff is also **ordered** to sit for a deposition within **45 days** of this Order. **If the plaintiff does not comply with this Order, <u>her case will be dismissed</u>.**

If the plaintiff complies with all the requirements of this Order, her amended complaint may proceed on all claims not dismissed by this Order.

So ordered.

Dated at Bridgeport, Connecticut, this 3rd day of February 2023.

<u>/s/ STEFAN R. UNDERHILL</u>
Stefan R. Underhill
United States District Judge